## Osgood & Co. *v.* Brown, Meeks and Flournoy.

A payment of an execution to a sheriff in bank notes, which are at par at the time and place of payment, unless objected to by the plaintiff in execution, is a full and complete discharge of the defendant in the execution, whatever may be the subsequent depreciation of such bank notes. If the bank notes are not at par, their payment to a sheriff is no satisfaction of the execution to which they are applied, unless expressly assented to by the plaintiff in execution.

Although the sheriff is, in a qualified sense, the agent of the plaintiff in execution, yet he is also the agent of the law, which points out his duty and limits and defines his power; the execution is his warrant of authority, and that restricts his agency to the receipt of money alone, or convertible bank paper: he has no discretion to substitute any thing else in satisfaction of the plaintiff's claim.

It has been expressly decided, that an attorney, as such, has no authority to receive bank paper not at par, and that his receipt therefor would not discharge the defendant in execution.

Where a judgment was obtained, and before the court adjourned one of the defendants applied to the clerk and had an execution issued and placed in the hands of the sheriff, and then immediately paid the same in bank notes which were received ordinarily at par, but about which there was great distrust in the public mind, and which shortly after became greatly depreciated; held by the court, that the issuance of the execution at the instigation of the defendant was a fraud on the plaintiff, and conferred no authority on the sheriff to receive the money called for, so as to bind the plaintiff in execution, and that the payment of said notes under such circumstances, was no satisfaction of the execution.

As a general rule, no one but the plaintiff, or his attorney of record, has the right to sue out and control an execution.

Defendants in equity cannot question the jurisdiction of the court after filing a general answer to the bill.

The complainant charges that he, on the 14th of May, 1838, recovered two judgments against the defendant, Brown, on two acceptances of bills of exchange, one for three thousand one hundred and fifty-eight dollars, the other for three thousand six hundred and twenty-two dollars; that the currency of Mississippi, and particularly notes of the Brandon Bank, were then much depreci-

ated, and notes of said bank were rapidly declining in value, and shortly thereafter became of no value whatever; and their attorney instructed S. M. Flournoy, then sheriff of Madison county, not to receive said notes: that Brown was known to be rich, and they preferred the judgments against him to the notes of the bank. That by a fraudulent agreement between Brown, Flournoy, and Meek, application was made to the clerk of the court before its adjournment, and without notice to the complainants' attorney, to issue executions on the judgments before mentioned, and four days after the judgments were rendered, to wit, on 18th May, and that executions [were issued in a secret manner, concealing the same from the court and attorneys, and on the same day Flournoy entered on the executions that the amount was received in Brandon money, and so returned the executions satisfied. The bill then contains many charges deemed useless to abstract in the present case, but alleges in substance, that the whole was a fraudulent arrangement by defendants to defraud him of his money; that Brown paid nothing, and he has received nothing, and that judge of court of law refused leave to amend return of satisfied so as to enable him to enforce judgment.

Brown denies fraud; states that he was but the accommodation acceptor for Joseph Meek; that being sued, he applied to Jesse Meek, the defendant, who was administrator of Jos. Meek, then deceased, to pay the debts; that Jesse Meek told him he had done so, but how it was paid he did not know; that he himself paid nothing but costs of the suit.

Meek admits that he himself applied and had the executions issued, placed them in hands of sheriff, and paid them in Brandon Bank notes, which he says were passing current, and constituted the greater part of circulating medium. That he sued out execution because sheriff's receipt would be a voucher, &c.

Flournoy denies that he was instructed to receive nothing but good money, or indeed that he had any instructions; admits that he received Brandon money of Meek, and alleges that it was common to receive it on executions, and was not at a greater depreciation than ten per cent.

There is no proof.

J. MAYES and CLIFTON for complainants.

First. It appears from bill and answers, that Brown, the judgment debtor, has paid nothing; and that the complainants, the judgment creditor, has received nothing.

Second. That this state of things has been produced by Jesse Meek, who caused execution to issue, and made the payment in Brandon money.

Third. That the court of law has decided that Brown has a legal discharge by this proceeding, as leave was refused to amend sheriff's return under the state of case.

Fourth. There is no proof that Brown was accommodation acceptor; and if he was, complainants had nothing to do with the relations between him and Meek. He, as the acceptor, was their debtor; and whether it was an acceptance with or without funds, they of course knew not, cared not, and had nothing in law or in conscience to do with that.

These points are then submitted and relied on before the chancellor:

First. That although the chancellor may be of opinion that the law judge decided the law erroneously in refusing leave to amend the sheriff's return, he will take the law to be as Meek and Brown contended it was, and as the judge of law decided it was. The chancellor will not permit them "to blow hot and cold with the same breath" to repel us at law, by saying this is a legal discharge, and you cannot have the sheriff's return amended; and then, having had it decided so to be, again repel us in equity by saying the sheriff's return is no discharge, and you should proceed at law to sue out execution, and not in equity, there being no need for the action of this court. Besides, the chancellor, when a mere legal question arises in chancery proceedings, usually and properly refers that question to the law judge, and is governed by his decisions, even where the chancellor knows the law judge has decided erroneously: for this plain reason, one is constituted to decide questions of law, and they are within his competency, and his commission extends not to matters of equity; the other is constituted to decide questions of equity, and his competency extends not to mere questions of law. If the chancellor will not take it that the law judge determines the law right, it comes to this—

that if the law judge says he has no power to redress my wrong, and therefore dismisses me, and the chancellor says that the power exists in the law judge to redress my wrong, and therefore I must not or need not apply to him, but must go to the law judge, I lose all redress.

On this point I do not wish to be understood as contending that the plaintiffs had not full remedy at law, if the law was rightly understood by the court of law; but I contend that if the defendants, in a court of law, successfully rely that the court of law cannot correct the wrong, and the court of law so decide, that a court of equity will not hear them, when there they urge that the legal question was at law decided wrong, that they have taken their ground, and have been sustained in it, and that under these circumstances in this case the law is *res adjudicata*, and conclusive on them.

Nor can they say that the decision of the law judge, if wrong, was subject to reversal.

1. Because this court cannot judicially know what the law is, except so far as it is necessary to know the law in order to keep up the boundary between law and equity; and in this case the law has been adjudged by the only tribunal to which this court could refer a legal question, for the court of appeals have only appellate jurisdiction.

2. We referred the legal question to the court of law, they also referred it to that court; by it the question was decided for them; we submit, and they, of course, cannot complain.

Under these circumstances, it is contended that the conscience of Jesse Meek, who, without authority and as a mere intermeddler, sued out execution, paid the Brandon paper, and procured the return to be made, is concerned, and that he should be decreed to pay the money, as by his fraud we lose it at law; and that Brown, by his subsequent assent, and setting up this fraudulent act of Meek to prevent our proceeding at law, should also be decreed to pay the money: he became a party to Meek's act by subsequent assent.

ANDERSON, BRIEN and HUGHES for respondents.

The sheriff is agent for both parties. 2 Cowan, 139; 4 Ib. 422.

*Osgood & Co. v. Brown, Meeks and Flournoy.*

THE CHANCELLOR.

The principal question made by counsel in this case is, whether the satisfaction which was entered upon the execution on the judgment at law, is binding upon the complainants, under the circumstances disclosed in the pleadings and proof. The counsel for the defendant insist that the only question is, whether a payment made in bank notes which constituted the general currency of the country is not a legal satisfaction of the execution. A proper solution of this question must depend upon the further fact whether the bank paper so paid was at par at the time and place of payment, and whether the plaintiff in execution objected at that time or previously to that mode of satisfaction. I am not fully satisfied from the facts in the case, whether the notes of the Brandon Bank were or were not at par at the time when they were paid over to the sheriff, on the complainant's execution. The answer of sheriff Flournoy, against whom no relief is asked, says the notes of the bank were not at a greater discount than ten per cent. The answers of the other defendants say that the paper of that bank circulated generally, and was generally received at par. The witnesses in the case speak to the same effect; none of them affirm that the paper was at par, but that it was generally received at par by the sheriff and others. Bank paper, in the absence of a better currency, frequently has a local circulation at par when it is in fact ten or fifteen per cent short of par value. I do not think therefore that the question raised by counsel properly arises from the facts in the case. If it were fairly presented I should have no difficulty in declaring that where a defendant in execution, in good faith, made a payment in bank notes which were at par at the time and place of payment, and the receipt of which was not objected to by the plaintiff in execution, such payment would constitute a full and complete discharge to the defendant, whatever might be the subsequent depreciation of such notes. And where a sheriff having an execution in his hands, receives bank paper under like circumstances, he will be regarded as the agent of the execution creditor, to the extent of making such receipt amount to a satisfaction of the execution and discharge of the defendant.

It is a matter of public history that the legislature of this state has created various banks with capacity to issue paper intended

to serve as a circulating medium. The usages of trade and the general sanction of society have invested this paper with the attributes of money. It has by common consent constituted the currency of the country, and has been generally received in lieu of the precious metals. To this universal usage the assent of a judgment creditor would be presumed, unless his dissent was expressly made known. If, however, the bank paper was not actually at par at the time and place of payment, it then ceased to be the true representative of money, and no forced custom nor usage to receive it at par, nor any thing short of the express assent of the judgment creditor so to receive it, could operate either a discharge of the sheriff who received it or the defendant in execution. It would establish a most dangerous precedent to hold that a sheriff might discharge the claim of a judgment creditor, by receiving in payment depreciated and depreciating paper, simply because it had a sort of forced circulation resulting from the necessities of the country and the scarcity of a sounder currency. It was urged for the defendants, that the sheriff is in such cases the agent of the plaintiff, and that his acts are binding upon his principal. Although the sheriff is in a qualified sense the agent of the plaintiff in execution, yet he is also the agent of the law, which points out his duty and limits and defines his power. The execution is his warrant of authority, and that restricts his agency to the receipt of money alone or convertible bank paper. He has no discretion to substitute any thing else in satisfaction of the plaintiff's claim. Rochelle *v.* Campbell and Chambers, 1 McChord's Ch. Rep. 53. In the case of the Bank of Orange County *v.* Wakeman, 1 Cowen's Rep. 46, it was held that the sheriff had not the power to discharge an execution by returning it satisfied, unless he had executed it in the due course of law. In that case the sheriff took the defendant's negotiable note, receipted for it in full payment, and returned the execution satisfied. The court held that it did not amount to a satisfaction of the execution, and put the decision upon the want of authority in the sheriff to discharge it in that way.

A sheriff who receives the promissory notes of an incorporated bank, which have lost their character as money by reason of their depreciation, would place the defendant upon no higher ground

than if he had received from him the simple promissory note of some third person, and thereupon given a receipt in full discharge of the execution. The power of the plaintiff's attorney, in controlling an execution, is certainly as broad and comprehensive as that of the sheriff who may be charged with its enforcement, yet it has been expressly decided that an attorney, as such, has no authority to receive bank paper not at par, and that his receipt therefor would not discharge the defendant in execution. See Wickliffe v. Davis, 2 J. J. Marsh. 71. Nor can the attorney do any act to discharge the judgment short of receiving actual payment. Lewis v. Gamage, 1 Pick. R. 347.

But it is useless to pursue this branch of the case further, as there is another feature in it upon which I can have no doubt the complainants are entitled to relief. It is admitted that the execution was applied for and taken out at the sole instance of the defendant Meeks, without the authority or sanction of the plaintiffs in execution, or their attorney. It appears, from the respective dates of the transaction, that application was made to have the execution issued before the adjournment of the court at which the judgment was rendered, and the execution was forthwith placed in the hands of the sheriff, and the bank paper paid over, and a receipt in full taken from the sheriff. Whence this great haste, this urgent solicitude and unauthorized interference, on the part of one who not only had no authority to control the execution, but was not even a party to the record? For what purpose was the execution placed in the hands of the sheriff? If Meeks was ready with the money, and eager to satisfy the judgment at once, why issue an execution? Why not offer the money to the plaintiffs' attorney, who, it seems, must have been in attendance upon the court? His receipt would have been quite as available as that of the sheriff.

The issuing of an execution presupposes the necessity of coercing payment from the defendant, and cannot be necessary where a party stands by, ready and anxious to pay without coercion. No reason whatever is furnished for this officious and extraordinary conduct on the part of Meeks, except that he wanted the sheriff's receipt as a voucher of payment. It is strange that it did not occur to him that the attorney's receipt would serve his purpose

quite as well, and save the costs of execution and sheriff's commission. It is said to be a maxim in ethics, that contrivance proves design. What the design was in this particular case is plainly inferrable from the conduct of the party, connected with other facts disclosed in the case. The testimony and the answers sufficiently show (what is also a matter of public history) that although the paper of the Brandon Bank may at that time have been received at par, under a sort of forced process in the ordinary transactions of society, yet there existed in the public mind a very general distrust of its goodness. That this distrust had seized upon the mind of Meeks, is, I think, sufficiently apparent. Why his unauthorized conduct in calling for an execution to issue within four days after the rendition of the judgment—before even the plaintiffs themselves could have regularly sued it out—if he was not moved by the fear that his Brandon money would depreciate on his hands? What motive could he have had for increasing the costs by suing out an execution, and immediately paying to the sheriff the bank paper? None, certainly, but a knowledge that it was then the habit of the sheriff to receive it, and a conviction that it would not be so received by either the plaintiffs or their attorney, if offered to them. Whether a fraud was actually intended or not, is immaterial. The conduct of Meeks operated a fraud upon the rights of the complainants, of which neither he nor the defendant in the judgment at law should be allowed to avail themselves. It is true that Meeks denies, in his answer, any intention of practising a fraud, but he at the same time admits the material facts in which the fraud is charged to consist. This does away the effect of the general denial.

I am, moreover, clearly of the opinion that the issuing of the execution at the instance of the defendant Meeks, rendered it irregular, if not absolutely void, as to the complainants, and gave no authority to the sheriff to receive the money called for, so as to bind the plaintiffs in execution. As a general rule, no one but the plaintiff, or his attorney of record, has the right to sue out and control an execution. It may be of the utmost importance to the plaintiff to know when his execution is in the hands of an officer, that he may give such instructions as are consistent with his rights. He may desire to bid for property levied on, so as to real-

ize his judgment and prevent the property from being bought in at a sacrifice, and his judgment left unpaid. To give to the defendant, or any third person, the right of controlling an execution without the privity of the plaintiff, would establish a rule full of mischief, which might lead to the practice of the grossest fraud.

It was suggested, by one of the defendants' counsel, that the complainants' remedy was at law, and, having resorted to the law court and failed there, this court would give no relief. If the defendants had demurred to the bill, or insisted upon this objection in their answers, I should perhaps have been inclined to dismiss the bill, upon the ground that the complainants' remedy was at law. But, however this might have been, the defendants, having answered generally, have waived that objection, and cannot now raise the question of jurisdiction. See Underhill *v.* Van Courtlandt, 2 John. Ch. Rep. 339 ; Cable *v.* Martin, 1 How. Rep. 558. I shall, in accordance with these views, declare that the satisfaction which was entered on the execution at law is fraudulent and void as to the complainants, and having taken jurisdiction of the case, and all the parties being before me who are bound for the debt, I shall direct a decree against Brown and Meeks for the original debt and interest, with liberty to sue out an execution of *fieri facias* from this court for the enforcement thereof. And as the complainants might have pursued their remedy at law, they will be decreed to pay the costs of the proceeding here.